IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

CHERYL HIGGINS,

                              Plaintiff,

        vs.                                              Civil Action No.
                                                         03-CV-826 (LEK/DEP)

JO ANNE B. BARNHART, Commissioner
of Social Security,

                              Defendant.

_____

APPEARANCES:                              OF COUNSEL:

FOR PLAINTIFF:

MASTAITIS LAW OFFICE                      STEPHEN MASTAITIS, ESQ.
1412 Route 9P
Saratoga Springs, NY 12866

FOR DEFENDANT:

HON. GLENN T. SUDDABY                     WILLIAM H. PEASE, ESQ.
United States Attorney for the            Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

OFFICE OF GENERAL COUNSEL                 BARBARA L. SPIVAK, ESQ.
Social Security Administration            Chief Counsel, Region II
26 Federal Plaza
New York, NY 10278                        DAVID L. BROWN, ESQ.
                                          Assistant Regional Counsel

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

### REPORT AND RECOMMENDATION

Plaintiff Cheryl A. Higgins, who suffers residual effects from two separate falls experienced in 2000 including, principally, chronic lower back pain, has commenced this proceeding to challenge an administrative determination by the Commissioner that she is not disabled, and thus ineligible to receive disability insurance Social Security benefits.  Plaintiff maintains that the finding of disability, which was based upon a determination that she retains the residual functional capacity ("RFC") to perform a full range of sedentary work, notwithstanding her injuries and corresponding limitations, improperly overlooks contrary opinions of her treating physician as well as her subjective complaints of pain.  Plaintiff seeks reversal of the Commissioner's determination and a remand to the agency with a directed finding of disability.

Having carefully reviewed the record now before the court, in light of plaintiff's arguments, I find that the determination of the administrative law judge ("ALJ") who concluded that plaintiff is not disabled resulted from the application of proper legal standards and is supported by substantial evidence in the record.  Accordingly, I recommend the entry of judgment

on the pleadings dismissing plaintiff's complaint.

I.     BACKGROUND

Plaintiff was born on October 5, 1957; at the time of the administrative hearing in this matter, she was forty-five years old. Administrative Transcript at pp. 23, 81.[1]  Plaintiff is five feet and five inches in height, and weighs approximately 205 pounds.  AT 24.  Plaintiff attended high school through the eleventh grade, but was required to drop out in order to assist her family in caring for her siblings.  AT 24.  Plaintiff later earned a general equivalency diploma ("GED") in 1987, and has since taken one college course on the principles of banking.  AT 25. Plaintiff is not married, and lives in a mobile home together with her boyfriend and her seventeen year old daughter.  AT 25-26.  Plaintiff's last employment was in 2000, when she worked as a waitress, and claims to have worked continuously from 1980 up until leaving her waitress position.[2]  AT 34-35, 99, 107.

In April of 2000 plaintiff fell while at work, twisting her right ankle and

---

[1]      Portions of the administrative transcript of evidence and proceedings before the agency (Dkt. No. 6) will be cited in this decision as "AT ___."

[2]      In recounting her work history to the agency plaintiff was able to account for all of the period between 1980 and 2000, with the exception of a hiatus between 1991 and either 1993 or 1994.  AT 99, 107.

back, and causing her to slam against a wall.  AT 32, 254.  Plaintiff was examined by Dr. Neil D. Coleman, an orthopedic surgeon, on May 16, 2000, at which time she exhibited largely unremarkable symptomology. AT 254-55.  Dr. Coleman's notes of that visit reflect that X-rays taken on May 3, 2000 revealed no significant pathology or disc space narrowing. AT 255.  Based upon his examination, Dr. Coleman diagnosed the plaintiff as suffering from lumbosacral strain, prescribed Lortab and Celebrex to address the pain, and recommended physical therapy.  *Id.*  As a result of her April, 2000 work-related accident, plaintiff applied for and received a workers' compensation award.  AT 33.

Plaintiff slipped and fell again in early June of 2000, on this occasion while shopping in a local grocery store.  AT 32, 268.  As a result of that fall plaintiff landed on both of her knees and an outstretched hand, causing her to suffer injury to both knees and her left hand.[3]  AT 32, 268.

Subsequent to her two accidents in April and June of 2000, plaintiff underwent two separate surgeries.  In the first, performed on February 15, 2001 by Dr. Coleman, plaintiff arthroscopically underwent partial resection

---

[3]      The medical evidence in the record is equivocal regarding the severity of plaintiff's injuries from that fall.  Notes of appointments with Dr. Coleman on June 6, 2000, June 20, 2000, and July 11, 2000, for example, make no reference to the fall and indicate no significant change in plaintiff's pain complaints.  *See* AT 251-53.

of the anterior fat pad, left knee.  AT 156, 238-39.  By June of 2000 Dr. Coleman reported that plaintiff was experiencing "decreased swelling and stiffness", and recommended that she return to normal activity as tolerated" with "[n]o specific restrictions [being] given."  AT 229.

Plaintiff also underwent an excision of a left wrist volar ganglion and tenosynovectomy of flexor carpi radialis with tenolysis, on June 26, 2001.  AT 287-88.  According to Suheil Khuri, M.D., the orthopedic specialist who performed the procedure, the wrist was said to be "healing nicely", with good movement and strength, leading to plaintiff's discharge from Dr. Khuri's care, for purposes of treating her wrist, on July 27, 2001.  AT 285.

In addition to back and knee pain, plaintiff also suffers from left shoulder discomfort, to which she attributes an onset date of June of 2000.  AT 23-24.  In November of 2000, Dr. Coleman examined the plaintiff, finding a full range of motion in her left shoulder, though with "some slight tenderness around the scapular region."  AT 243.  Dr. Coleman diagnosed the plaintiff as suffering from a sprain of the left shoulder, and recommended that she undergo physical therapy to address both her back and shoulder issues. AT 244.  Notes of subsequent visits by the plaintiff to Dr. Coleman fail to make reference to

plaintiff's left shoulder, suggesting that the shoulder pain has subsided to at least a tolerable level.[4]  *See* AT 226-42.

In addition to seeing specialists Dr. Coleman and Dr. Khuri, plaintiff has in the past sought treatment on an ongoing basis from her regular health care provider, Dr. Rosa Pacheco, who at the time of the hearing she continued to visit every couple of months.  AT 29, 37.  Plaintiff was also seen by Dr. Earl Zimmerman, a neurologist, on August 23, 2001.  AT 33, 307-09; 326-28.  Dr. Zimmerman's report of that visit is largely unremarkable, with no significant limitations suggested with respect to plaintiff's RFC.  *Id.*

In addition to these medical providers, the plaintiff and/or her medical records were reviewed consultatively by several other professional health care providers.  In July of 2001, Dr. Eugene Hoffert completed a questionnaire reflecting that plaintiff experiences only modest limitations, including in lifting and/or carrying over twenty pounds, and indicating that plaintiff can stand or walk only for less than two hours per day but can sit without any limitations for up to eight hours.  AT 276-80.

---

[4]     During the hearing plaintiff testified that her left shoulder pain persists, though she did not elaborate regarding its severity.  AT 24.  Later in her testimony plaintiff stated that the condition, described by her as tendonitis, bothers her on a daily basis.  AT 29.

On August 14, 2001 Dr. Amelita Balagtas performed an orthopedic examination of the plaintiff. AT 303-06. In a report of that examination Dr. Balagatas noted that plaintiff did not appear to be in any acute distress, her gait was normal, and she was able to walk on heels and toes. AT 304. Plaintiff's range of motion was observed to be generally good, and examination of the thoracic and lumbar spine revealed only slight limitation of forward flexion, with straight leg raising limited only by hamstring tightness. AT 304-05. Based upon her findings, Dr. Balagatas discerned only modest limitations in plaintiff's ability to bend, lift, sit and stand for prolonged periods, kneel and squat. AT 305.

An assessment of plaintiff's employability was completed in June of 2002 by Dr. Gordan Kuhar, a pain management specialist, for the Columbia County Department of Social Services. AT 329-31. Dr. Kuhar diagnosed the plaintiff as suffering from low back pain and left leg symptoms, resulting in moderate limitations in her ability to walk, carry, push, pull, climb, and function in a work setting at a consistent pace, as well as more significant limitations with respect to sitting, standing, bending, twisting and lifting. AT 329-30. In December of 2002, Dr. Kuhar essentially reiterated those same limitations. AT 341-43.

-7-

During the administrative hearing, plaintiff testified that she experiences constant pain, limiting her ability to walk, sit and stand, and to carry much at all.  AT 28.  Plaintiff testified that on bad days, which occur approximately seventy-five percent of the time, the pain is so extreme that she is required to take hot baths, stretch, and lie on the couch with a heating pad without the ability to do much of anything else.  AT 36.  Plaintiff did acknowledge, however, that she is able to perform certain functions, including to drive for brief periods of time, AT 34; to attend to her personal needs, AT 28-29; to do some grocery shopping and cooking, AT 27, 38; and to stand and walk for approximately fifteen minutes at a time, AT 28.  Many of the required tasks in her household, including laundry and assistance with shopping, are performed by plaintiff's boyfriend and daughter.  AT 27, 36.

II.   PROCEDURAL HISTORY

    A.   Proceedings Before The Agency

Plaintiff filed an application with the agency for disability insurance benefits under the Social Security Act on July 3, 2001, alleging a disability onset date of June 6, 2000.  AT 81-83.  Plaintiff's application was denied on or about October 2, 2001.  AT 43-47.

At plaintiff's request, a hearing was conducted on February 3, 2003 by ALJ Joseph F. Gibbons to address the denial of plaintiff's application for disability insurance benefits.  AT 19-41.  During that hearing, at which plaintiff was represented by counsel, ALJ Gibbons considered medical evidence developed with regard to plaintiff's care and treatment, as well as testimony of both the plaintiff and her boyfriend.  *Id.*  Following the close of proceedings, ALJ Gibbons issued a decision on February 24, 2003 finding that plaintiff was not disabled, and thus not entitled to receive disability insurance benefits.  AT 8-18.

Applying the familiar, five-step test for determining disability, ALJ Gibbons initially noted at step one that plaintiff had not engaged in substantial gainful activity since the alleged onset of her disability, and at steps two and three that she suffers from musculoskeletal impairments considered to be severe, though not meeting or equaling in severity any of the presumptively disabling listed impairments set forth in the pertinent regulations, 20 C.F.R. Pt. 404, Subpt. P, App.1.  AT 12.

ALJ Gibbons next examined the record to determine plaintiff's RFC, given the exertional limitations associated with her various conditions.  AT 12-16.  Rejecting contrary opinions from Drs. Kuhar and Pacheco, in favor

of a markedly less restrictive assessment rendered by Dr. Eugene Hoffert, a surgical consultant who examined both the plaintiff and her medical records in June of 2001, *see* AT 276-82, and largely unremarkable examinations performed by Drs. Balagtas, AT 303-06, and Zimmerman, AT 307-09, ALJ Gibbons concluded that plaintiff retains the capacity to perform a full range of sedentary activity.[5]  AT 14-16.  In arriving at that conclusion, ALJ Gibbons rejected plaintiff's subjective testimony regarding her disabling pain, as both not well supported by clinical evidence in the record and at odds with testimony regarding her daily activities.  AT 15. After finding at step four that plaintiff is incapable of performing her past relevant work as either a waitress or a bank teller, the ALJ proceeded at step five to apply the sedentary work finding and plaintiff's other relevant

---

[5]     Sedentary work is defined by regulation as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).  These requirements described by regulation have been supplemented by an agency ruling clarifying that sedentary work generally involves periods of standing or walking for a total of two hours in an eight hour work day, with sitting up to a total of approximately six hours in a similar period.  *See* Social Security Ruling 83-10.

characteristics to the medical-vocational guidelines set forth in the

governing regulations (the "grid"), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and

particularly Rules 201.21 and 201.28 thereof, concluding that plaintiff is

not disabled.  AT 16-17.  The ALJ's decision became a final determination

of the agency when, on June 3, 2003, the Social Security Administration

Appeals Council denied plaintiff's request for review of that decision.  AT

2-4.

       B.      <u>Proceedings Before This Court</u>

Plaintiff commenced this action under section 205(g) of the Social

Security Act, 42 U.S.C. § 405(g), on July 3, 2003.  Dkt. No. 1.  Issue was

thereafter joined by the Commissioner's filing of an answer, accompanied

by an administrative transcript of the proceedings before the agency, on

October 16, 2003.  Dkt. Nos. 5-6.  With the filing of briefs on behalf of the

plaintiff on November 28, 2003, Dkt. No. 7, and the Commissioner on

December 24, 2003, Dkt. No. 8, the matter is now ripe for determination

and has been referred to me for the issuance of a report and

recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern

District of New York Local Rule 72.3(d).[6]  *See also* Fed. R. Civ. P. 72(b).

_____

      [6]     This matter has been treated in accordance with the procedures set forth
in General Order No. 18 (formerly, General Order No. 43) which was issued by the

III.   DISCUSSION

A.   Scope Of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the Commissioner is limited; that review requires a determination of whether the correct legal standards were applied, and whether the decision is supported by substantial evidence.  *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel,* 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F. Supp.2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, her decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence.  *Martone*, 70 F. Supp.2d at 148.  If, however, the correct legal standards have been applied and the ALJ's findings are supported by substantial evidence,

---

Hon. Ralph W. Smith, Jr., then-Chief United States Magistrate Judge, on January 28, 1998, and amended and reissued by then-Chief District Judge Frederick J. Scullin, Jr. on September 19, 2001.  Under that General Order an action such as this is considered procedurally, once issue has been joined, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

those findings are conclusive, and the decision should withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact.  *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel*, 13 F. Supp.2d 312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217 (1938)).  To be substantial, there must be "'more than a mere scintilla'" of evidence scattered throughout the administrative record.  *Id.*; *Martone*, 70 F. Supp.2d at 148 (citing *Richardson*).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 715 S. Ct. 456, 464 (1951)).

When a reviewing court concludes that incorrect legal standards have been applied, and/or that substantial evidence does not support the agency's determination, the agency's decision should be reversed.  42 U.S.C. § 405(g); *see Martone*, 70 F. Supp.2d at 148.  In such a case the court may remand the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to develop a full and fair record or to explain his or her reasoning.  *Martone*, 70 F. Supp.2d at 148 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)).  A remand pursuant to sentence six of section 405(g) is warranted if new, non-cumulative evidence proffered to the district court should be considered at the agency level.  *See Lisa v. Secretary of Dep't of Health & Human Servs. of U.S.*, 940 F.2d 40, 43 (2d Cir. 1991).  Reversal without remand, while unusual, is appropriate when there is "persuasive proof of disability" in the record and it would serve no useful purpose to remand the matter for further proceedings before the agency.  *Parker*, 626 F.2d at 235; *Simmons v. United States R.R. Retirement Bd.*, 982 F.2d 49, 57 (2d Cir. 1992); *Carroll v. Secretary of Health & Human Servs.*, 705 F.2d 638, 644 (2d Cir. 1983).

    B.    <u>Disability Determination: The Five Step Evaluation Process</u>

The Social Security Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.] "  42 U.S.C. § 423(d)(1)(A).   In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b), 416.920(b).  If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a

-15-

severe impairment or combination of impairments which significantly

restricts his or her physical or mental ability to perform basic work

activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer

from such an impairment, the agency must next determine whether it

meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.*

§§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so,

then the claimant is "presumptively disabled".  *Martone*, 70 F. Supp.2d at

149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20

C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an

assessment of whether the claimant's RFC precludes the performance of

his or her past relevant work.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If it

is determined that it does, then as a final matter the agency must examine

whether the claimant can do any other work.  *Id.* §§ 404.1520(f),

416.920(f).

The burden of showing that the claimant cannot perform past work

lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996);

*Ferraris*, 728 F.2d at 584.  Once that burden has been met, however, it

becomes incumbent upon the agency to prove that the claimant is capable

of performing other work.  *Perez*, 77 F.3d at 46.  In deciding whether that

burden has been met, the ALJ should consider the claimant's RFC, age,

education, past work experience, and transferability of skills.  *Ferraris*, 728

F.2d at 585; *Martone*, 70 F. Supp.2d at 150.

      C.    <u>The Evidence In This Case</u>

      In her brief, plaintiff contends that the ALJ's determination that she

retains the RFC to perform a full range of sedentary work is flawed and

does not garner the support of substantial evidence in the record.  Plaintiff

also contends that in making that finding the ALJ improperly rejected

contrary opinions of Dr. Pacheco, her treating physician, and those

recorded by Dr. Khuri, and additionally that he improperly discounted her

subjective complaints of disabling pain.

      1.    <u>RFC</u>

      A claimant's RFC represents a finding of the range of tasks he or

she is capable of performing notwithstanding the impairments at issue.  20

C.F.R. § 404.1545(a).  An RFC finding is informed by consideration of a

claimant's physical abilities, mental abilities, symptomology, including

pain, and other limitations which could interfere with work activities on a

regular and continuing basis.  *Id.*; *Martone*, 70 F.Supp.2d at 150.

To properly ascertain a claimant's RFC, an ALJ must therefore assess the person's exertional capabilities, addressing his or her ability to sit, stand, walk, lift, carry, push and pull.  20 C.F.R. § 404.1569a. Nonexertional limitations or impairments, including impairments which result in postural and manipulative limitations, must also be considered. 20 C.F.R. § 404.1569a; *see also* 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e).  When making an RFC determination, an ALJ must specify those functions which the claimant is capable of performing; conclusory statements concerning his or her capabilities, however, will not suffice. *Martone*, 70 F.Supp.2d at 150 (citing *Ferraris*, 728 F.2d at 587).  An administrative RFC finding can withstand judicial scrutiny only if there is substantial evidence in the record to support each requirement listed in the regulations.  *Martone*, 70 F.Supp.2d at 150 (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Sobolewski v. Apfel*, 985 F.Supp. 300, 309-10 (E.D.N.Y. 1997).

Unquestionably, the evidence in the record regarding plaintiff's RFC is conflicting.  At the request of the Columbia County Department of Social Services, Dr. Gordon Kuhar, a certified specialist in the area of pain management, found the plaintiff to be moderately limited in the areas of

walking, standing, sitting, lifting, carrying, pushing, pulling, bending, and climbing, and very limited in the ability to function in a workplace setting at a consistent pace, concluding that she is unable to function in the three specific settings noted, including classroom training, clerical duties and maintenance duties.  AT 341-43.  Regrettably, however, those findings are not supported by clinical evidence, including the results of magnetic resonance imaging ("MRI") studies.  AT 131, 251.

Similarly in January of 2003, at the request of plaintiff's counsel, Dr. Pacheco completed an RFC form indicating significant limitations and declaring Ms. Higgins to have a moderate to marked partial and permanent disability.[7]  AT 338-40.  Dr. Pacheco's RFC assessment goes on to find plaintiff incapable of lifting and carrying even five pounds, and notes that claimant is unable to sit, stand and walk for more than a total of one hour in an eight hour day.  AT 339.  Once again, however, these findings are not supported by objective evidence in the record, and it is noted that it was not even until April 24, 2001 – a year after the first fall –

---

[7]     To the extent that Dr. Pacheco's RFC determination opines on the ultimate issue of disability, it is entitled to no weight since it touches upon an area that is specifically reserved to the Commissioner.  20 C.F.R. § 404.1527(e)(1); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999).

that plaintiff saw Dr. Pacheco concerning her injuries.  *See* AT 338.

In stark contrast to these more limiting RFC assessments are opinions from others including Dr. Coleman, plaintiff's treating orthopedic specialist.  Many of Dr. Coleman's reports of plaintiff's office visits reveal the lack of any discernable objective abnormalities, and his note regarding an October 11, 2001 visit shows that while he considers plaintiff to be disabled from "her usual occupation" there were no other limitations offered.  AT 324

In April of 2001 an extensive RFC evaluation was completed by plaintiff's physical therapist, Katherine K. Hodge, M.S.P.T., upon referral from Dr. Coleman.  AT 168-72.  In that evaluation, while concluding that plaintiff is unable to return to her position as a waitress, Ms. Hodge opines that plaintiff can tolerate sitting, standing and walking during 67% to 100% of an eight hour work day, provided she retains the ability to change position frequently.[8]  AT 168-72.  This translates into the ability to sit and stand for between 5.4 hours and eight hours in an eight hour work day,

_____

[8]     As the Second Circuit has made clear, the requirements associated with sedentary work do not require that a claimant be completely immobile without the ability to change positions – "[t]he regulations do not mandate that all sedentary jobs in the United States require the worker to sit without moving for six hours, trapped like a seat-belted passenger in the center seat on a transcontinental flight."  *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004).

which falls within the range described by the agency as consistent with the ability to perform sedentary work.  Social Security Ruling ("SSR") 96-9p; *see Kornak v. Chater*, No. 94 CV 3225, 1996 WL 622187, at * 8 (E.D.N.Y. Oct. 22, 1996) (citing, *inter alia*, *Delamater v. Schweiker*, 721 F.2d 50, 52-54 (2d Cir. 1983)).

The ALJ's RFC finding is also supported by an assessment of surgical consultant Dr. Eugene Hoffert, who examined the plaintiff in July of 2001 and found her capable of lifting and carrying up to twenty pounds, standing and/or walking for less than two hours a day, and sitting for up to eight hours in a work day.  AT 278-80.  Dr. Hoffert's findings are also fully consistent with the ability to perform sedentary work.

In sum, the ALJ's RFC finding is supported by substantial evidence in the record.

### 2.   Treating Physicians

One of plaintiff's chief complaints surrounds the ALJ's rejection of opinions from her primary care provider, Dr. Rosa Pacheco, to the effect that she is unable to perform any of the functions associated with even sedentary work.  Plaintiff also challenges the ALJ's rejection of the views of Dr. Kuhar, on similar grounds.

Ordinarily, the opinion of a treating physician is entitled to considerable deference, provided that it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence.[9]  *Veino*, 312 F.3d at 588; *Barnett*, 13 F. Supp.2d at 316.  Such opinions are not controlling, however, if contrary to other substantial evidence in the record.  *Veino*, 312 F.3d at 588.  Where conflicts arise in the form of contradictory medical evidence, their resolution is properly entrusted to the Commissioner.  *Id.*

In deciding what weight, if any, an ALJ should accord to medical opinions, he or she may consider a variety of factors including "[t]he

---

[9]     The regulation which governs treating physicians provides:

> Generally, we give more weight to opinions from your treating sources . . . If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.   When we do not give the treating source's opinion controlling weight, we apply [various factors] in determining the weight to give the opinion.

20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

duration of a patient-physician relationship, the reasoning accompanying the opinion, the opinion's consistency with other evidence, and the physician's specialization or lack thereof[.]"  See *Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993) (discussing 20 C.F.R. §§ 404.1527, 416.927).

When a treating physician's opinions are repudiated, the ALJ must provide reasons for the rejection.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Failure to apply the appropriate legal standards for considering a treating physician's opinions is a proper basis for reversal and remand, as is the failure to provide reasons for rejection of his or her opinions.  *Johnson*, 817 F.2d at 985; *Barnett*, 13 F. Supp.2d at 316-17.

Although in her brief plaintiff identifies Drs. Pacheco and Kuhar as the specific treating physicians at issue, claiming that their opinions were improperly rejected by the ALJ, Dr. Kuhar did not render the extent and continuity of treatment necessary to qualify him as a treating source.  20 C.F.R. § 1527(d)(2).  I note that it is significant, moreover, that Dr. Pacheco did not examine the plaintiff until April 24, 2001, a year after her first fall and some ten months following her second, and at that time noted only mild tenderness over the sacroiliac joint as well as over the right hip

joint, with the range of motion in plaintiff's back appearing to be intact, as well as the straight leg raise.  AT 262.  Dr. Pacheco's examination on that date also reflected no numbness or paresthesias in the lower extremities. *Id.*  Notes of a preoperative clearance examination conducted by Dr. Pacheco in June of 2001, in anticipation of removal of a cyst from her left wrist, reflect that plaintiff's current low back pain appeared at the time "to be somewhat improved with medication."  AT 257.

The ALJ was entitled to reject the opinions of Dr. Pacheco to the extent they run counter to his findings in light of the lack of objective diagnostic evidence to support the limitations noted in them.  20 C.F.R. § 404.1527(d)(3).[10]  EMG and nerve conduction velocity studies of plaintiff's lower extremities conducted in 2000 proved negative, and back x-rays showed only the potential onset of arthritis.  AT 245.  Similarly, an MRI and x-rays, as well as a physical examination, of plaintiff's left knee all proved negative, leading Dr. Colman to conclude that she did not require further treatment of the knee injury.  AT 240, 244.  Additionally, x-rays taken of plaintiff's shoulder in March of 2001 revealed no evidence of fracture or dislocation.  AT 160.  Significantly Dr. Colman, an orthopedic

_____

[10]     Thus, for example, an MRI study of plaintiff's lumbar spine of July of 2000 was negative.  AT 131, 251.

specialist also properly regarded as plaintiff's treating physician, with perhaps greater ability to observe and monitor plaintiff's condition during the time following her two accidents in 2000, sharply conflict with the opinions of Dr. Pacheco, Dr. Colman having reported on several occasions that plaintiff's physical examination results were normal.  *E.g.*, AT 227, 232, 233.

Under these circumstances the opinions of Dr. Pacheco, which are potentially somewhat in conflict with the ALJ's findings, were properly discounted.  20 C.F.R. 404.1527(d).

### 3.   Plaintiff's Subjective Pain Complaints

Plaintiff also maintains that portions of her testimony during the hearing, concerning the various limitations imposed by her condition and the pain associated with it, serving to preclude her ability to perform even sedentary work were improperly rejected by the ALJ.

An ALJ must take into account subjective complaints of pain in making the five step disability analysis.  20 C.F.R. §§ 404.1529(a), (d), 416.929(a), (d).  When examining the issue of pain, however, the ALJ is not required to blindly accept the subjective testimony of a claimant. *Marcus*, 615 F.2d at 27; *Martone*, 70 F. Supp.2d at 151 (citing *Marcus*).

Rather, an ALJ retains the discretion to evaluate a claimant's subjective testimony, including testimony concerning pain. *See Mimms v. Heckler,* 750 F.2d 180, 185-86 (2d Cir. 1984). In deciding how to exercise that discretion the ALJ must consider a variety of factors which ordinarily would be relevant on the issue of credibility in any context, including the claimant's credibility, his or her motivation, and the medical evidence in the record. *See Sweatman v. Callahan*, No. 96-CV-1966, 1998 WL 59461, at *5 (N.D.N.Y. Feb. 11, 1998) (Pooler, D.J. and Smith, M.J.) (citing *Marcus*, 615 F.2d at 27-28)). In doing so, the ALJ must reach an independent judgment concerning the actual extent of pain suffered and its impact upon the claimant's ability to work. *Id.*

When such testimony is consistent with and supported by objective clinical evidence demonstrating that claimant has a medical impairment which one could reasonably anticipate would produce such pain, it is entitled to considerable weight.[11] *Barnett*, 13 F. Supp.2d at 316; *see also* 20 C.F.R. §§ 404.1529(a), 416.929(a). If the claimant's testimony concerning the intensity, persistence or functional limitations associated

_____

[11] In the Act, Congress has specified that a claimant will not be viewed as disabled unless he or she supplies medical or other evidence establishing the existence of a medical impairment which would reasonably be expected to produce the pain or other symptoms alleged. 42 U.S.C. § 423(d)(5)(A).

with his or her pain is not fully supported by clinical evidence, however, then the ALJ must consider additional factors in order to assess that testimony, including: 1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).

After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject claimant's subjective testimony. *Martone*, 70 F. Supp.2d at 151; *see also* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).  If such testimony is rejected, however, the ALJ must explicitly state the basis for doing so with sufficient particularity to enable a reviewing court to determine whether those reasons for disbelief were legitimate, and whether the determination is supported by substantial evidence.  *Martone*, 70 F. Supp.2d at 151 (citing *Brandon v. Bowen,* 666 F. Supp. 604, 608 (S.D.N.Y. 1987)).  Where the ALJ's findings are supported by substantial evidence, the decision to discount subjective testimony may not be disturbed on court review.  *Aponte v. Secretary, Dep't of Health & Human*

*Servs. of U.S.,* 728 F.2d 588, 591 (2d Cir. 1984).

It may be, as plaintiff asserts, that she does suffer from some degree of discomfort as a result of her back condition.  The fact that she suffers from discomfort, however, does not automatically qualify her as disabled, since "disability requires more than mere inability to work without pain."  *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983).

In this instance the ALJ acknowledged the existence of one or more impairments that could reasonably be expected to produce pain, though not of the severity indicated by the plaintiff.  *See* AT 15.  In arriving at that conclusion the ALJ properly considered not only plaintiff's testimony concerning her daily activities, but additionally evidence generated by her physical therapist, Catherine Hodge, reflecting a markedly brighter outlook than that of the plaintiff, as well as the RFC assessment of Dr. Hoffert.  *See* AT 168-73, 276-80.  As the ALJ noted, despite plaintiff's claim of suffering severe pain, in the past she visited a pain clinic only once every three months.  *See* AT 15.  This fact provided reason for the ALJ to discount plaintiff's claims regarding disabling pain.

The circumstances of this case are readily distinguishable from those presented in *Bazile v. Apfel*, a case heavily relied upon by the

plaintiff in her brief.  113 F. Supp.2d 181 (D. Mass. 2000).  There the

plaintiff, who also complained of lower back pain, had been diagnosed as

suffering, *inter alia*, from a herniated disc, with evidence of narrowing of

the L5-L1 disc space.  131 F. Supp. at 183.  Additionally, unlike in this

instance, examination of the plaintiff in that case reflected significant

limitation of range of motion.  *See id.*  In contrast to Ms. Higgins, the

plaintiff in *Bazile* testified that she was unable to do even the simplest of

chores around the home, and could not shower or attend appointments

without the assistance of her sister.  113 F. Supp. at 186.  The limitations

experienced by plaintiff in this case, by her own account, are far less

restrictive than those to which the plaintiff testified in *Bazile*, making that

case inapposite.

Under these circumstances I find that the ALJ's rejection of plaintiff's

subjective pain complaints is supported by substantial evidence, and was

properly detailed in his opinion.

IV.    <u>SUMMARY AND RECOMMENDATION</u>

Undeniably, the plaintiff in this action suffers from some degree of

residual pain as a result of two separate falls experienced in 2000.

Applying the requisite deferential standard, however, I find that the ALJ's

determination that notwithstanding her symptoms plaintiff retains the RFC to perform a full range of sedentary work is supported by the record, and that the rejection of potentially contrary opinions of one of plaintiff's treating physicians, Dr. Pacheco, was appropriate and properly explained. Additionally, I find that plaintiff's subjective complaints of debilitating pain were properly discounted by the ALJ, and his reasons for doing so appropriately explained in his decision.

Based upon the foregoing it is hereby

RECOMMENDED that defendants' motion for judgment on the pleadings be GRANTED, the Commissioner's determination that plaintiff is not disabled AFFIRMED, and plaintiff's complaint in this action DISMISSED in its entirety.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court within ten (10) days.  FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roland v. Racette*, 984 F.2d 85 (2d Cir. 1993).

IT IS FURTHER ORDERED, that the Clerk of the Court serve a copy

of this Report and Recommendation upon the parties electronically.


Dated:     April 17, 2006
           Syracuse, NY

David E. Peebles
U.S. Magistrate Judge


G:\socialsecurity\higgins.wpd